**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-1509**

---

JOSE UBALDINO POLANCO-MADEROS,

Petitioner,

v.

TODD BLANCHE, Attorney General,

Respondent.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Argued: September 16, 2026 Decided: November 23, 2026

---

Before WILKINSON and HARRIS, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Petition granted and remanded for further proceedings by unpublished opinion. Senior Judge Floyd wrote the majority opinion, in which Judge Harris joined. Judge Wilkinson wrote a dissenting opinion.

---

**ARGUED:** Abdoul Aziz Konare, KONARE LAW, Frederick, Maryland, for Petitioner. Rachel Pearl Berman-Vaporis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian M. Boynton, Acting Assistant Attorney General, Alison Marie Igoe, Lindsay M. Murphy, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Senior Circuit Judge:

Petitioner Jose Ubaldino Polanco-Maderos (Mr. Polanco-Maderos) seeks review of the Board of Immigration Appeals' (BIA) affirmance of the immigration judge's (IJ) denial of his application for Special Rule Cancellation of Removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA). The BIA engaged in improper factfinding and arbitrarily ignored relevant evidence in the record. We grant the petition for review, vacate the portion of the BIA's judgment holding that political opinion motivated the harm committed against the guerillas, and remand for the IJ to consider whether the harm was on account of political opinion.

I.

Mr. Polanco-Maderos, a Guatemalan citizen, entered the United States in 1989. He filed an application for asylum in 1994, and an application for Special Rule Cancellation of Removal under NACARA in 2006. He provided a sworn statement in support of the latter to United States Citizenship and Immigration Services (USCIS) at an interview held on June 13, 2006. In the sworn statement, Mr. Polanco-Maderos testified to the following: He was forced to join the Guatemalan army as a soldier in October 1982, at age 17. He received three months of training before he and his company were tasked with patrolling remote mountain areas to "flush . . . out" guerillas. A.R. 483.[1] He took guerrillas prisoner and transferred them to his company's command post, where members of the "S-2"

[1] "A.R." refers to the Administrative Record filed in this appeal.

division—the group in charge of interrogations—forced them to "give their secrets." A.R. 483–84. He witnessed prisoners being beaten, choked, smothered, and held under water. When asked if he participated in such activities, Mr. Polanco-Maderos responded, "Yes, sometimes. We were sometimes ordered to do this. I am not proud of it." A.R. 484. He then explained that his job was to guard guerillas while under interrogation, but that he did not directly participate in any of the methods for getting guerrillas to divulge their secrets.

In 2007, the Department of Homeland Security (DHS) referred Mr. Polanco-Maderos's applications to an IJ and initiated removal proceedings against him in Immigration Court. On May 15, 2012, Mr. Polanco-Maderos appeared before an IJ. He testified to the following: He was drafted to serve in the Guatemalan army from 1982 to 1985. He received three months of basic training and then was sent to "areas full of guerrillas." A.R. 146. He engaged in combat fighting with the guerrillas. He and his unit handed over any guerrillas they captured to S-2. His unit would bring any captured guerrillas down to their command post, about an hour from their camp in the mountains. Then, S-2 would send helicopters to pick up the guerrillas from the command post and transport them to another site for interrogation. He was never personally involved in transporting prisoners. He never mistreated the prisoners and never saw or heard of any guerrillas being mistreated while in army custody. By the time he was discharged in 1985, he had been promoted to a corporal and had nine men in his command.

On cross-examination, Mr. Polanco-Maderos stated that he had come to the realization at that moment that the interpreter from his 2006 interview had incorrectly

translated some questions. Counsel for DHS then asked Mr. Polanco-Maderos if he recalled stating during the 2006 interview that he had witnessed guerrillas being mistreated. Mr. Polanco-Maderos answered that he could not remember stating so and offered that he might have misunderstood the USCIS officer's question. DHS counsel then asked whether Mr. Polanco-Maderos recalled stating that the military would do things to make the guerrillas tell the truth, such as beating, choking, or smothering them. Mr. Polanco-Maderos responded that he did not remember making such a statement, but also explained that he had been referring to the S-2 division, which had been in charge of interrogations. DHS counsel inquired whether Mr. Polanco-Maderos recalled answering "Yes . . . I am not proud of it" when asked if he ever participated in the mistreatment of prisoners. A.R. 170–71. Mr. Polanco-Maderos denied making such a statement and asserted that the interpreter at the interview had made an error.

Mr. Polanco-Maderos also clarified that he was never ordered to mistreat prisoners. Rather, he was only ordered to guard them and keep them from escaping. He affirmed that he never saw any guerrillas being mistreated, but had heard from friends in the S-2 division that prisoners were beaten, choked, burned, and held under water. When asked why he had testified on direct examination that he had not heard of guerrillas being mistreated at all, Mr. Polanco-Maderos responded that he had not understood the question.

The IJ concluded that Mr. Polanco-Maderos was not credible due to discrepancies between his 2006 sworn statement to USCIS and his in-court testimony. The IJ was unpersuaded by Mr. Polanco-Maderos's explanation that he had not understood the interpreter at his 2006 interview, reasoning that the interview questions were "specific, in

some instances repetitive," and that his recorded answers were directly responsive to the questions asked. A.R. 55. The IJ determined that there was sufficient evidence to indicate that the "persecution bar" to relief may apply. A.R. 55–56. The IJ recognized that Mr. Polanco-Maderos was "of young age when he served" during the "civil war" and "was placed as a combatant in difficult situations," but observed that "as a member of the military, there are rules of engagement . . . [and] a code of conduct that must be followed." A.R. 56. The IJ found that "[t]here are instances where he, in fact, was aware of, if not involved in, violations which are not acceptable under the rules of conduct." *Id.* The IJ therefore concluded that Mr. Polanco-Maderos was barred from qualifying for relief under NACARA and denied his application. Accordingly, he ordered Mr. Polanco-Maderos removed.

Mr. Polanco-Maderos timely appealed to the BIA. He argued that the persecutor bar should not apply in his case because: (1) the mistreatment of prisoners described in his 2006 sworn statement was not inflicted on account of a statutorily protected ground and therefore was not persecution; (2) his act of guarding prisoners was routine war-time conduct that was not persecution; and (3) his conduct was not voluntary, but rather done under duress. He did not challenge the IJ's adverse credibility finding.

The BIA held that the evidence indicated that the persecutor bar may apply, and affirmed the IJ's determination that Mr. Polanco-Maderos failed to meet his burden of showing that the persecutor bar did not apply. The BIA was unpersuaded by Mr. Polanco-Maderos's argument that the Guatemalan military did not target the guerrillas on account of a protected ground. Nor did the BIA credit Mr. Polanco-Maderos's assertion that his

conduct of capturing and transporting guerrilla prisoners was not material to their persecution. Finally, the BIA rejected Mr. Polanco-Maderos's argument that the persecutor bar should not apply because he acted under duress, reasoning that the persecutor bar does not include a duress exception. The BIA therefore dismissed Mr. Polanco-Maderos's administrative appeal, and this petition for review followed.

II.

"We review de novo legal questions raised in petitions for review." *De Leon v. Holder*, 761 F.3d 336, 339 (4th Cir. 2014) (quoting *Higuit v. Gonzales*, 433 F.3d 417, 420 (4th Cir. 2006)). Where, as here, "the BIA has adopted and supplemented [the Immigration Judge]'s decision, . . . we review both rulings and accord them appropriate deference." *Viegas v. Holder*, 699 F.3d 798, 801 (4th Cir. 2012) (quoting *Cervantes v. Holder*, 597 F.3d 229, 232 (4th Cir. 2010)); *see also Quintanilla v. Holder*, 758 F.3d 570, 576 (4th Cir. 2014); *Barahona v. Holder*, 691 F.3d 349, 353 (4th Cir. 2012) (quoting *Kourouma v. Holder*, 588 F.3d 234, 239–40 (4th Cir. 2009)).

"[A]ppellate review of a BIA decision denying special rule cancellation of removal under the NACARA is circumscribed by the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(i)." *Quintanilla*, 758 F.3d at 576. "Pursuant to that jurisdictional statute, 'a determination by the Attorney General as to whether [an applicant] satisfies the requirements of cancellation of removal is final and shall not be subject to review by any court.'" *Id.* (quoting *Barahona*, 691 F.3d at 353). Although we lack jurisdiction over purely factual findings and discretionary determinations, we have authority to review

constitutional claims and questions of law, including mixed questions of law and fact. *See id.* (quoting *Barahona*, 691 F.3d at 353); *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024) (holding that § 1252(a)(2)(D) gives circuit courts jurisdiction to review "mixed question[s] of law and fact"); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227, 235 (2020) (holding that § 1252(a)(2)(D) allows circuit courts to consider "constitutional claims or questions of law," including "the application of a legal standard to undisputed or established facts," but "will still forbid appeals of factual determinations").

III.

Under § 203 of NACARA, Guatemalan nationals "may be eligible for special rule cancellation of removal if" they "entered the United States on or before September 19, 1990, and registered for benefits pursuant to the settlement agreement reached in *American Baptist Churches v. Thornburgh* . . . on or before December 31, 1991." *Esquivel v. Holder*, 477 F. App'x 967, 968 (4th Cir. 2012) (per curiam); *see also Quintanilla*, 758 F.3d at 573.

"Even if a NACARA applicant otherwise demonstrates that he satisfies the NACARA criteria, he may yet be ineligible for cancellation of removal if he falls within one of six mandatory bars specified in 8 U.S.C. § 1229b(c)." *Quintanilla*, 758 F.3d at 573. One of those six bars is the persecutor bar, which provides that applicants are ineligible for NACARA if they have "ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's . . . political opinion." 8

U.S.C. § 1231(b)(3)(B)(i); *see also* 8 C.F.R. § 1240.66(a); *Quintanilla*, 758 F.3d at 573; *Pastora v. Holder*, 737 F.3d 902, 905–06 (4th Cir. 2013).

Applicants have the burden to prove that the persecutor bar does not apply. *See* 8 C.F.R. § 1240.64(a); *Gonzalez v. Holder*, 673 F.3d 35, 40 (1st Cir. 2012) (holding that § 1240.64(a) puts the burden on applicants to show NACARA eligibility, including that statutory bars do not apply). If the record evidence indicates that the persecutor bar may apply, applicants are held to their burden to prove by a preponderance of the evidence that it does not. 8 C.F.R. § 1240.8(d); *see also Quintanilla*, 758 F.3d at 579; *Pastora*, 737 F.3d at 906. An applicant generally will be deemed subject to the persecutor bar for assisting or participating in persecution if (1) there is a "nexus between the [applicant's] actions and the persecution of others, such that the [applicant] can fairly be characterized as having actually assisted or otherwise participated in that persecution," and (2) the applicant has acted with "some level of prior or contemporaneous knowledge that the persecution was being conducted." *Quintanilla*, 758 F.3d at 577 (citations omitted); *accord In re D-R-*, 27 I&N Dec. 105, 118–119 n.17, 120 (BIA 2017). "Concerning the second requirement, 'the evidence need not show that the alleged persecutor had specific actual knowledge that his actions assisted in a particular act of persecution.'" *Quintanilla*, 758 F.3d at 577 (quoting *Xu Sheng Gao v. U.S. Att'y Gen.*, 500 F.3d 93, 103 (2d Cir. 2007)). "Application of the persecutor bar, however, requires 'some level of culpable knowledge that the consequences of one's actions would assist in acts of persecution.'" *Id.* (quoting *Xu Sheng Gao*, 500 F.3d at 103).

Mr. Polanco-Maderos argues that "[t]he BIA erroneously engaged in fact-finding by determining in the first instance that the harm committed against the guerrillas was motivated by a protected ground," and "[t]he BIA's determination that the harm committed against the guerrillas was motivated by a protected ground is not supported by substantial evidence."[2] Opening Br. at 5.

A.

Whether the BIA "engaged in its own fact-finding" is a "'question[] of law' over which we have jurisdiction under § 1252(a)(2)(D)." *Gracia Moncaleano v. Att'y Gen. of U.S.*, 390 F. App'x 81, 85 (3d Cir. 2010); *see also Osmani v. Garland*, 24 F.4th 617, 621 (7th Cir. 2022) (explaining that whether "the BIA exceeded the scope of its review by engaging in improper factfinding" is a "question[] of law").

"Except for taking administrative notice of commonly known facts such as current events or the contents of official documents," the BIA cannot "engage in factfinding in the course of deciding cases." 8 C.F.R. § 1003.1(d)(3)(iv). We have explained that this regulation "restricts the BIA's ability to add new evidence to the record, but does not prohibit the BIA from making a factual determination upon *de novo* review of the record

[2] Mr. Polanco-Maderos also argued two other issues in his brief (that the BIA erred in holding that his assistance was material and erred in relying on the Attorney General's decision in *In re Negusie*, 28 I&N Dec. 120 (A.G. 2020)). But his counsel waived these two issues at oral argument. Thus, we do not address them. *See United States v. Wilson*, 484 F.3d 267, 273 n.2 (4th Cir. 2007) (declining to address arguments waived by counsel at oral argument).

before it." *Hui Pan v. Holder*, 737 F.3d 921, 931 n.3 (4th Cir. 2013) (quoting *Li Fang Lin v. Mukasey*, 517 F.3d 685, 692 n.10 (4th Cir. 2008)).

Here, the BIA acknowledged that "[t]he Immigration Judge did not specifically address whether the harm inflicted on the captive guerillas and civilians was on account of a protected ground, as is necessary to trigger the persecutor bar." A.R. 4. Nevertheless, the BIA found that "the record clearly reflects that the individuals were captured and killed because they were guerillas or suspected guerrilla sympathizers, and further that the military was harming them based on a perception that they posed a political threat to the Guatemalan government." *Id.* In so concluding, the BIA cited the IJ's finding that Mr. Polanco-Maderos's military service took place in the midst of Guatemala's civil war. *Id.* (citing A.R. 55–57). The BIA thereby purported to infer that because the harm was motivated by the guerillas' engagement in civil war, it must also have been motivated by the guerillas' political opinion.

The BIA is permitted to "dr[a]w a logical inference from the IJ's factfinding and [the applicant's] own testimony." *Hernandez v. Garland*, 66 F.4th 94, 103 (2d Cir. 2023); *see also Rivera Ramos v. Bondi*, No. 21-1129, 2025 WL 3514248, at *1 (9th Cir. Dec. 8, 2025) ("[T]he BIA and IJ may 'make reasonable inferences from evidence in the record[.]'" (quoting *Flores-Rodriguez v. Garland*, 8 F.4th 1108, 1112 (9th Cir. 2021))); *Garcia v. Garland*, No. 20-71355, 2021 WL 5447019, at *2 (9th Cir. Nov. 22, 2021) (explaining that although "the BIA engaged in impermissible fact-finding with respect to the specific amount of methamphetamine in his possession, evidence in the record, namely

the police report, supports the inference that Gamez's possession of narcotics was not solely for personal use").

The evidence in the record, however, does not support a "reasonable" inference that the military captured and killed the individuals based on a perception that they posed a political threat to the government. *Rivera Ramos*, 2025 WL 3514248, at *1. That the military captured, interrogated, and harmed the guerrillas because they were engaged in civil war does not logically lead to the conclusion that the harm was motivated by the guerrillas' political opinion. In the asylum context, we have distinguished between "political opinion" and "general violence incidental to . . . civil war itself." *Cruz-Diaz v. U.S. I.N.S.*, 86 F.3d 330, 332 (4th Cir. 1996) (per curiam). We have also held that persecution can result "simply because [the victim] served in the army," not "'on account of' any political opinion imputed to [the victim] due to his military service." *Carranza-Martinez v. U.S. I.N.S.*, 135 F.3d 769 (Table), 1998 WL 77839, at *3 (4th Cir. 1998) (per curiam). "Service in the military is not of necessity a political statement." *Id.* Persecution on account of military status—as opposed to political opinion—does not necessarily implicate the persecutor bar.

*I.N.S. v. Elias-Zacarias* is also instructive. 502 U.S. 478 (1992). There, the asylum seeker argued that a guerrilla organization's attempt to coerce him into performing military service constituted persecution on account of political opinion. *Id.* at 479. The Supreme Court held that "the mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment is inadequate to establish (and, indeed, goes far to refute) the proposition that [the petitioner] fears persecution *on account of* political opinion." *Id.*

at 482. In other words, wartime activities (such as forced recruitment, or in this case, participation in torture) are not necessarily done on account of political opinion.

Additionally, the BIA has concluded that "harm which may result incidentally from behavior directed at another goal, the overthrow of a government or, alternatively, the defense of that government against an opponent, is not persecution." *Matter of Rodriguez-Majano*, 19 I&N Dec. 811, 815 (BIA 1988), *abrogated on other grounds by Negusie v. Holder*, 555 U.S. 511 (2009). It also held that engagement in "military activities of a type normal in" war—including "drafting of youths as soldiers, the unofficial recruiting of soldiers by force, the *disciplining of members of a rebel group*, . . . the prosecution of draft dodgers," "attacking military bases, destroying property, or forcible recruiting"— "cannot be said to constitute persecution." *Id.* at 815–16 (emphasis added). The record here indicates that the Guatemalan military engaged in disciplining of members of a rebel group. Under this BIA precedent, the harm was not motivated by persecution on account of political opinion. Thus, the BIA's inference that political opinion motivated the harm was not reasonable.

Because the BIA relied on an unreasonable inference rather than the IJ's factfinding, it engaged in improper factfinding in concluding that the harm was on account of political opinion. The BIA engages in "improper factfinding" if it reaches a conclusion when "the IJ did not develop the record regarding [a particular] question and [if] there is a factual dispute that the IJ did not resolve." *Lopez-Salguero v. Barr*, 817 F. App'x 468, 469 (9th Cir. 2020) (citing *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012)). "Where the IJ has not made a finding of fact on a disputed matter, and such a finding is

necessary to resolution of the case, the BIA must remand to the IJ to make the required finding; it may not conduct its own fact-finding." *Rodriguez*, 683 F.3d at 1170; *see also Matter of F-P-R-*, 24 I&N Dec. 681, 682 n.1 (BIA 2008) ("[A]ll evidence which is pertinent to determinations made during deportation proceedings . . . must be adduced in the hearing before the immigration judge. The Board is an appellate body whose function is to review, not to create, a record." (quoting *Matter of Fedorenko*, 19 I&N Dec. 57, 74 (BIA 1984))).

As the BIA recognized, the IJ did not find that the Guatemalan military harmed the guerillas due to their political opinion. The BIA should have remanded to the IJ to make the required finding rather than making the finding itself through an unreasonable inference. Such improper factfinding constitutes an abuse of discretion.

B.

The BIA also abused its discretion in failing to consider evidence in the record tending to favor an alternative motive for the harm. Mr. Polanco-Maderos testified in his sworn statement that the military "mistreat[ed] civilians or guerillas" in order to "make them tell the truth or to give their secrets." A.R. 484. "The BIA abuses its discretion 'if it fails to offer a reasoned explanation for its decision, or if it distorts or disregards important aspects of the applicant's claim.'" *Portillo Flores v. Garland*, 3 F.4th 615, 626 (4th Cir. 2021) (quoting *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014)). "Ultimately, in reviewing agency decisions in immigration matters, it is 'our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the

factfinder.'" *Cortes v. Garland*, 105 F.4th 124, 135 (4th Cir. 2024) (quoting *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011)).

Here, the BIA failed to offer a reasoned explanation of why "the military was harming [the guerillas] based on a perception that they posed a political threat to the Guatemalan government." A.R. 4. It also arbitrarily ignored the evidence that the harm was motivated by a desire to gather information from the detainees. It therefore abused its discretion in determining that the harm committed against the guerrillas was motivated by a protected ground.

IV.

For the foregoing reasons, we grant the petition for review, vacate in part the judgment of the BIA, and remand the case for further proceedings consistent with this opinion.

*GRANTED AND REMANDED*

WILKINSON, Circuit Judge, dissenting:

Between 1960 and 1996, Guatemala was embroiled in a terrible civil war fought between the government of Guatemala and rebel groups within the country. During that war, the military intelligence unit of the Guatemalan military—the S-2 Division—systematically engaged in identifying, interrogating, and eliminating suspected dissidents.

Petitioner Jose Ubaldino Polanco-Maderos, a native and citizen of Guatemala, aided the S-2 Division in some of its barbarous practices, capturing alleged guerillas in Guatemala, delivering them to the S-2 division, and guarding those prisoners as S-2 soldiers beat, choked, smothered, and subjected them to simulated drowning. *See* AR 484–85. In short, petitioner is a persecutor. Our immigration laws provide neither aid or comfort to such aliens and bar them from remaining in the United States once a final order of removal has been entered against them. *See* 8 U.S.C. § 1231(b)(3)(B)(i).

The majority instead concludes that the Immigration Judge and the Board of Immigration Appeals have not done enough to show that petitioner assisted in persecution based on a statutorily protected ground. But the record is sufficient to show that petitioner failed to meet his burden to rebut the application of the persecutor bar, and that further proceedings would likely compel the same conclusion again. Since the majority reaches a contrary conclusion, I respectfully dissent.

## I.

The Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) did not err in denying Polanco-Maderos his requested relief of special rule cancellation of removal

under the Nicaraguan Adjustment and Central American Relief Act (NACARA). *See* IIRIRA § 309(f), as amended by NACARA, Pub. L. No. 105-100, § 203(b), 111 Stat. 2160, 2198–99 (Nov. 19, 1997). The proceedings below evaluated all the requirements of special rule cancellation of removal, correctly concluding that the persecutor bar found in 8 U.S.C. § 1231(b)(3)(B)(i) bars Polanco-Maderos from the requested relief.

A.

Polanco-Maderos seeks special rule cancellation of removal under NACARA. An alien is ineligible for relief under NACARA if he is "an alien described in section 241(b)(3)(B)(i)" of the Immigration and Nationality Act (INA). *See* 8 U.S.C. § 1231(b)(3)(B)(i). The section NACARA cites in the INA is known as the persecutor bar. It prohibits relief if the agency determines that "the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(B)(i); *see Pastora v. Holder*, 737 F.3d 902, 905–06 (4th Cir. 2013). Additionally, since Polanco-Maderos challenges a final order of removal on appeal, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B).

The proof scheme here is simple enough. The burden of proof to show eligibility for NACARA benefits lies with petitioner. *See Quitanilla v. Holder*, 758 F.3d 570, 573 (4th Cir. 2014) (citing *Pastora*, 737 F.3d at 905); 8 U.S.C. 1229a(c)(4)(A) (An alien applying for … protection from removal has the burden of proof to establish that the

alien … satisfies the applicable eligibility requirements). If "the evidence indicates that [the persecutor bar] may apply, the alien shall have the burden of proving by a preponderance of the evidence that [the persecutor bar] do[es] not apply." *Pastora*, 737 F.3d at 906 (citing 8 C.F.R. § 1240.8(d)) (alterations in the original). When "there is evidence that the alien engaged in persecution, he must prove by a preponderance of the evidence that he is not barred from relief on this ground." *Id.* (citation omitted).

An alien may be subject to the persecutor bar if the record indicates two elements. First, there must be a "nexus between the [applicant's] actions and the persecution of others, such that the [applicant] can fairly be characterized as having actually assisted or otherwise participated in that persecution." *Quitanilla*, 758 F.3d at 577 (citation omitted). The agency distinguishes between "genuine assistance in persecution and inconsequential association with persecutors." *Id.* (citation omitted). And plainly, the persecution must be "because of" "race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(B)(i).

Second, the applicant must "have acted with scienter," or with "some level of prior or contemporaneous knowledge that the persecution was being conducted." "[T]he evidence need not show that the alleged persecutor had specific actual knowledge that his actions assisted in a particular act of persecution," but rather only requires "some level of culpable knowledge that the consequences of one's actions would assist in persecution." *Quitanilla*, 758 F.3d at 577 (citation omitted).

A holistic view of the matter is not out of order. Did petitioner assist or did he not in the persecution of an individual because of that person's statutorily protected ground.

*Pastora* did not require any set of magic words or finding regarding the persecutor bar, but rather looked to the administrative record and observed that "[t]he totality of the specific evidence in [that] case was sufficient to indicate that the persecutor bar applied, requiring [the alien] to prove by a preponderance of the evidence that he did not assist or otherwise participate in persecution." *See* 737 F.3d at 906–07.

B.

The agency's conclusion in this case was sound. As an initial matter, the IJ properly identified evidence in the record indicating that the persecutor bar may apply. The IJ cited Polanco-Maderos's 2006 sworn statement indicating that he assisted in the persecution of guerilla prisoners by guarding them while under interrogation. *See* AR 56–57. Polanco-Maderos admitted to capturing guerillas and delivering them to the S-2 division for interrogation. *See* AR 154–155. While guarding these prisoners, Polanco-Maderos witnessed the S-2 division beat the prisoners, choke them, cover their faces to asphyxiate them, and burn them with superheated objects to have those prisoners divulge secrets. *See* AR 484–85.

This record evidence certainly showed that there was a "nexus between [Polanco-Maderos's] actions and the persecution of others, such that [Polanco-Maderos] can fairly be characterized as having actually assisted or otherwise participated in that persecution." *Quitanilla*, 758 F.3d at 577 (citation omitted). Polanco-Maderos's assistance was genuine and material, rather than merely inconsequential. *See id.*; AR 56–57, 484–85. Without him, the captured individuals would never have found themselves within the S-2

Division's clutches. And Polanco-Maderos guarded prisoners the S-2 Division interrogated while those prisoners were subjected to the most inhumane mistreatment. AR 56–57.

The second element—scienter—was also readily found. *Quitanilla*, 758 F.3d at 577. Polanco-Maderos knew he was capturing prisoners to be tortured, and that he was guarding them while they were being tortured. He even admitted as much, stating that he was "ordered to do this," and that "I am not proud of it" in his sworn statement. AR 484.

That petitioner was only seventeen years old when this all transpired is not dispositive. *See* Maj. Op. at 2. "Suspicion always haunts the guilty mind," but this case goes well beyond mere suspicion. WILLIAM SHAKESPEARE, KING HENRY VI, Part 3 act 5, sc. 6, ll. 11–12. Polanco-Maderos knew for certain the terrible wrongness of the actions he assisted and admitted as much in the record.

Thus, for good reason, at oral argument Polanco-Maderos's counsel abandoned the argument made in petitioner's opening brief that the assistance he provided to the S-2 Division was merely immaterial. *See* Pet. Br. 11–14; *see* Oral Argument at 00:50, 07:51–08:11. And similarly, petitioner's counsel also disclaimed any argument that duress could be used as a defense against the persecutor bar. *See* Pet. Br. 14–24; Oral Argument at 09:23–09:31. This too was for good reason as 8 U.S.C. § 1231(b)(3)(B)(i) contains no duress defense in its plain language—as the Ninth Circuit recently recognized. *See Perez-Castillo v. Blanche*, 190 F.4th 812, 820–21 (9th Cir. 2026).

C.

With all this in mind, both Polanco-Maderos and the majority hang their hat on the idea that the IJ did not explicitly find that the persecution in question was "because of" "race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(B)(i). *See* Pet Br. 6–7; Maj. Op. at 10–11. And the majority places emphasis on one line in the BIA's opinion stating that the "Immigration Judge did not specifically address whether the harm inflicted on the captive guerrillas and civilians was on account of a protected ground, as is necessary to trigger the persecutor bar." AR 4; *see* Maj. Op. at 10. The majority characterizes the BIA's analysis of whether the record "reflect[ed] that the individuals were captured and killed because" of their political opinions as impermissible factfinding. *See* Maj. Op. at 12; AR 4.

But the agency applied the relevant legal standard correctly. In *Pastora*, we explained that if "the evidence indicates that the persecutor bar *may apply*, the alien shall have the burden of proving by a preponderance of the evidence that the persecutor bar does not apply." *Pastora*, 737 F.3d at 906 (citing 8 C.F.R. § 1240.8(d)) (alterations accepted) (emphasis added). All that is needed is evidence in the record that the persecutor bar "may apply," indicating petitioner then has an affirmative duty to rebut the bar. *Id.*

There was sufficient evidence that Polanco-Maderos assisted in persecution that occurred precisely because of the captured individuals' political opinions. *See* AR 55–57; AR 4–5. Both the IJ and BIA recognized the context of the Guatemalan Civil War and its role in this case. AR 55–57; AR 4–5. The individuals that Polanco-Maderos captured and guarded were suspected guerillas; they were captured based on a perception that those

alleged guerillas posed a political threat to the Guatemalan government. *See* AR 2. And the IJ noted that Polanco-Maderos in his sworn statement explained that the purpose of the interrogation of the guerillas was "to make them tell the truth or to give their secrets." AR 52.

Such secrets may be political in nature, and in fact likely are. The S-2 Division interrogated the captured individuals in question because they had a differing political ideology from the Guatemalan government; the government considered that ideology threatening, and to suppress it, persecuted those guerillas to have them divulge military secrets. Petitioner only captured suspected guerrillas—i.e., individuals deemed dangerous based on their dissident political opinions—not just any random civilians. This is not to say that any time there is a civil war, and enemy forces are interrogated, such interrogation occurs because of political opinion. But there was enough evidence in the record to place the burden of showing otherwise on Polanco-Maderos. *See Quitanilla*, 758 F.3d at 573.

The IJ in the case at bar affirmatively decided that Polanco-Maderos materially assisted in persecution. *See* AR 56–57. The persecution the IJ highlighted was "*because of* … political opinion," as that phrase is ordinarily understood. 8 U.S.C. § 1231(b)(3)(B)(i) (emphasis added). "[T]he ordinary meaning of 'because of' is 'by reason of'[.]" *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) (citation omitted). "That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause." *Id.* (citation omitted) "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for-cause." *Id.*

Had the guerillas not possessed a political ideology contrary to the Guatemalan government there would have been no reason for petitioner to capture them, or for the S-2 Division to interrogate those individuals. The agency therefore "decide[d]" that Polanco-Maderos assisted in persecution, *see Pastora*, 737 F.3d at 906 n.5, and that persecution was necessarily "because of" the guerillas' political opinion, *see Bostock*, 590 U.S. at 656.

Petitioner could of course have proffered evidence showing that "political opinion" was not a proximate cause—i.e., that he could not "fairly be characterized as having actually assisted or otherwise participated in [applicable] persecution." *Quitanilla*, 758 F.3d at 577. But since petitioner could not do so, the agency was correct in concluding that he was ineligible for relief.

II.

Once the burden to affirmatively rebut the persecutor bar squarely attached to Polanco-Maderos, he was given every chance to dispute the conclusion that he materially assisted in persecution. *See Pastora*, 737 F.3d at 906. Once again, he could not do so.

If "the evidence indicates that [the persecutor bar] may apply, the alien shall have the burden of proving by a preponderance of the evidence that [the persecutor bar] do[es] not apply." *Id.* (alterations in the original). Since there was ample "evidence that [Polanco-Maderos] engaged in persecution," the burden became his to "prove by a preponderance of the evidence that he [was] not barred from relief on this ground." *Id.* (citation omitted).

Critically, 8 U.S.C. § 1252(b)(4)(B)—which governs appeals of final orders of removal—circumscribes our review. Section 1252(b)(4)(B) "requires courts to review the

entirety of the agency's conclusions—both the underlying factual findings and the application of the INA to those findings—for substantial evidence." *Urias-Orellana v. Bondi*, 607 U.S. 537, 545 (2026). Under that standard, Polanco-Maderos's petition should have been denied.

The IJ even went so far as to make an adverse credibility finding against Polanco-Maderos. *See* AR 49. Petitioner never challenged that finding. *See* AR 4 n.2. This was for good reason, as petitioner's testimony was inconsistent with the sworn statement he provided to an asylum officer during the initial adjudication of his application. AR 49–50 During his sworn statement, petitioner admitted to aiding the mistreatment and torture of captured guerillas but then testified later that he merely turned in guerillas to the S-2 Division without knowing what happened to them afterwards, rendering his testimony uncredible. AR 53–54. Polanco-Maderos did not offer any other persuasive evidence to show that he did not assist in the persecution of others because of their political opinions. AR 4. Petitioner could have developed the idea that any persecution he assisted in was not "because of … political opinion" through independent evidence. He did not do so. *See* 8 U.S.C. § 1231(b)(3)(B)(i). As in *Pastora*, the combination of an adverse credibility finding coupled with no other relevant evidence to support Polanco-Maderos's position below should have ended any possibility of relief for petitioner on appeal. *See* 737 F.3d at 906–07.

The majority's contrary conclusion is troubling. It brushes aside the adverse credibility finding even though our precedent requires us to "uphold [the adverse credibility determination] unless no rational factfinder could agree with the [finding]."

*Herrera-Martinez v. Garland*, 22 F.4th 173, 185–86 (4th Cir. 2022) (citation omitted) (alterations in the original); *see* Maj. Op. at 4. In this case it is hard to see how a rational factfinder could arrive at any other conclusion than the one it did.

III.

We are a nation of immigrants, not persecutors. The persecutor bar imparts a simple yet profound lesson. Persecutors attempt to impose their political preferences on others not through persuasion but through abominable acts of violence. Yet as the Supreme Court long ago recognized, "Compulsory unification of opinion achieves only the unanimity of the graveyard." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 641 (1943). Rewarding those who engage in such behavior is anathema to our laws and our way of life.

Polanco-Maderos materially assisted in the capture and torture of suspected dissidents during the Guatemalan Civil War. Our law is clear. Such an alien cannot receive relief under NACARA because of the persecutor bar. Once a final order of removal is entered against such an alien, the only proper outcome is for that alien to be promptly removed from our country. As the majority effectively flips the burden of proof, ignores an adverse credibility finding, misapplies the standard of review, and blinks away the petitioner's participation in cruel persecutorial misconduct, I respectfully dissent.